UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| AMY PHILLIPS, | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 17 CV 7703 |
| | ) | |
| EXXONMOBIL CORPORATION, | ) | JURY TRIAL DEMANDED |
| Defendant. | ) | |

## COMPLAINT

Plaintiff AMY PHILLIPS, by and through her counsel, Salvatore Prescott & Porter, PLLC, brings this complaint against her employer, Defendant EXXONMOBIL CORPORATION, and states as follows:

## I. INTRODUCTION

1. AMY PHILLIPS is one of very few women or openly gay people working as process operators at EXXONMOBIL's Joliet Refinery. For years, PHILLIPS's supervisors and coworkers have treated her horribly— excluding her from necessary training, restricting her opportunities to progress, constantly belittling her, repeatedly referring to her as a "bitch" and a "cunt" and a "rat," writing hateful graffiti about her on walls and equipment all over the refinery, even threatening her physically and assaulting her. PHILLIPS's complaints to her supervisors and Human Resources only made matters worse. Not only did EXXONMOBIL fail to help PHILLIPS, but the company has actively retaliated against her.

1

2.     PHILLIPS now brings this action for damages and injunctive relief. She does so because she has been seriously harmed, and because she does not want what happened to her to happen to anyone else.

## II.    JURISDICTION AND VENUE

3.     This Court has subject-matter jurisdiction over plaintiff's federal claims, arising under the laws of the United States, pursuant to 28 U.S.C. § 1331, and has supplemental jurisdiction over plaintiff's state-law claims pursuant to 28 U.S.C. § 1367, because they are related to the federal claims and form part of the same case or controversy.

4.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b), because the events giving rise to the claims occurred in this district.

5.     On or about August 10, 2017, PHILLIPS filed a charge of discrimination and retaliation with the Equal Employment Opportunity Commission and the Illinois Department of Human Rights. On or about October 13, 2017, PHILLIPS received Notice of Right to Sue from the EEOC, authorizing her to commence this lawsuit.

### III.  THE PARTIES

6.  Plaintiff AMY PHILLIPS resides in the Northern District of Illinois. She has been an EXXONMOBIL employee since in or around 2013.

7.  Defendant EXXONMOBIL is a corporation doing business in the Northern District of Illinois. EXXONMOBIL operates a refinery at Arsenal Road and I-55, Channahon, IL 60410, approximately 40 miles southwest of Chicago, known as the Joliet Refinery. At all times relevant to this action, EXXONMOBIL has employed more than 15 individuals.

### IV.  FACTUAL ALLEGATIONS

8.  PHILLIPS started working for EXXONMOBIL as a process operator at the Joliet Refinery in 2013. As a process operator, PHILLIPS is responsible for monitoring equipment used in the processing of crude oil and responding when there are problems with the equipment. Her position is physically demanding, and she typically works twelve-hour shifts.

9.  The Joliet Refinery is a massive facility and one of the largest operated by EXXONMOBIL. It can be a dangerous workplace, and it has been listed as one of the most dangerous chemical facilities in the country. PHILLIPS risks her life day in and day out to serve EXXONMOBIL.

10.  PHILLIPS takes her work and training seriously, both because she cares about doing a good job and because she understands the critical importance of knowing and following safe practices at the facility.

3

11.    PHILLIPS has always been the only woman on her crew. Overall, there are few women working as process operators at the Joliet Refinery.

## PHILLIPS Was Demeaned and Denied Essential Training

12.    When PHILLIPS first began working at EXXONMOBIL, she—like all employees new to the Joliet Refinery—received classroom training relevant to her job as a process operator. PHILLIPS did not perceive any discrimination against her in this setting.

13.    Classroom training is only the first part of a process operator's training, however. Training in the field is essential to the process operator's development, and to her qualifications for more lucrative positions at the Joliet Refinery. Such training is also critical for maintaining safety at the facility.

14.    Once PHILLIPS finished the classroom training and began working in the field, she quickly noticed that her unit's culture was negative toward women.

15.    For example, PHILLIPS's supervisors, multiple times, made comments to her to the effect of, "You should just stay at home like most women." Another frequent refrain: "A woman's place is in the home."

16.    Multiple coworkers referred to PHILLIPS as a "cunt" and "bitch," regularly. Males made statements to each other that were degrading

4

to women, along the lines of, "Are you going to cry like a little bitch?" They also made repeated references to violence towards women, including showing each other videos that depict women being assaulted. In or about June 2017, PHILLIPS was present for a discussion in which one male coworker told another male coworker that he would "slap the fucking shit out of that bitch," referring to a female employee. When PHILLIPS confronted the man who made the statement, he claimed it was a joke and expressed irritation that PHILLIPS complained.

17.     PHILLIPS, who also is openly gay, was offended, hurt, and nervous about this behavior. She stood up for herself and objected to coworkers and supervisors who treated her this way. This did not go over well.

18.     Once it became clear that PHILLIPS was not tolerant of their harassing behavior, and that she did not conform to their views of how a woman should appear and behave, PHILLIPS's male coworkers and supervisors excluded and isolated her, refusing to include her in the unit's activities or provide critical field training.

19.     The training PHILLIPS sought was highly relevant to her position, and to the safety of herself and others at the Joliet Refinery.

20.     Instead of training her, her coworkers mocked her. In fact, PHILLIPS's requests to observe and assist became a running joke at the

5

facility, with her male coworkers openly mocking her and mimicking her requests.

21.     Because of her lack of support and training, PHILLIPS trained herself on key tasks, even watching YouTube videos to learn how to do things that her supervisors refused to teach her.

22.     PHILLIPS's supervisor also erected other kinds of roadblocks to her progression at the Joliet Refinery, including by repeatedly delaying her taking a test that would enable her to achieve higher pay. As another example, PHILLIPS's supervisor required her perform one key test— a walkthrough of the facility, demonstrating proficiency at certain tasks— backwards, which was unnecessary and made the test much more difficult. Although PHILLIPS still passed the test, it was clear that the supervisor was treating her differently than others in an effort to cause her to fail. PHILLIPS's male coworkers were not stymied in this way.

**PHILLIPS Discovers Hateful Graffiti**

23.     Over at least the past year, PHILLIPS has observed hateful graffiti directed at her throughout the facility, oftentimes openly mocking her sex and sexual orientation.

24.     Just a few examples of the graffiti include:

    a.     AMY LAZY GAY BITCH



    b.     AMY FAGGET LAZY RAT BITCH



c.   DIE AMY FAG RAT BITCH



d.  AMY LAZY FAG BITCH



e. AMY LAZY CUNT LICK FAG



25.     There was also a drawing of what appears to be a penis ejaculating on a person, with the name "AMY" next to the person.



26.     These are just some examples. There were dozens of separate instances of slurs about PHILLIPS being scrawled on refinery walls and equipment, where not only PHILLIPS but all who worked in the complex could see. Even when the words and images were painted over, they often

9

reappeared. This was and continues to be embarrassing and degrading to PHILLIPS. One male coworker told PHILLIPS that although he did not write the graffiti, he thought it was "hilarious."

**PHILLIPS Was Subjected to Physical Violence and Intimidation**

27.     In addition to the mental and emotional distress from the harassment, PHILLIPS has suffered and continues to suffer physical violence and threats of physical violence from her male coworkers.

28.     In late 2016, one particularly aggressive individual whom PHILLIPS suspected was responsible for some of the graffiti was working with her when PHILLIPS feared there might be a problem with one of the refinery's valve lineups. PHILLIPS asked the individual if he was sure that both of the valves off of the splitter tower were open.

29.     The male coworker responded with words to the effect of, "If you're so concerned about it, climb up there yourself, bitch. I fucking looked already and checked that they're open."

30.     PHILLIPS then climbed to the top of one of the towers, found that one of the valves was blocked, and notified her coworkers via the radio. Her male coworker then climbed up the tower, and PHILLIPS showed him the problem.

31.     Her coworker then said, "Why don't you mind your own business, bitch. I don't need you up here, you cunt." Then he said, "You know,

people can fall off towers, and no one would know anything other than that it was an accident."

32. This was frightening to PHILLIPS, as she was alone with him on a high tower, well above the ground. She understood her coworker to be threatening her.

33. Later in the day, the same individual shoulder checked PHILLIPS, purposefully thrusting his shoulder into her body.

34. PHILLIPS approached him to try to discuss his conduct toward her. When PHILLIPS said, "We need to talk," he pushed past her, again hitting her body.

35. PHILLIPS followed him, trying to initiate a discussion, and finally said, "Ok, then let's go to the zone," referring to upper management. He stopped and said, "Of course you would you stupid bitch. No one wants to talk to you; everyone knows you're a cunt rat."

36. In addition to the verbal and physical harassment, PHILLIPS's male coworkers also sought to interfere with her ability to do her job. Because the Joliet Refinery is so large, employees use bikes to traverse the grounds. PHILLIPS has discovered her bike with flattened tires, stolen seats, and chained with a heavy-duty lock.

37. On at least one occasion when PHILLIPS found her bike disabled with a heavy-duty lock, in or around March 2017, she went to use

her backup bike. It too was chained with a heavy-duty lock not used on other bikes in the facility.

38.    A female coworker reported the matter to Human Resources, with PHILLIPS's knowledge and permission, but no one from the Human Resources department ever contacted PHILLIPS to rectify the situation. PHILLIPS also approached her working foreman and another top supervisor, and received no response. PHILLIPS was forced to go to plant security in order to try to remove the locks, but they too refused to offer assistance.

39.    It was only after PHILLIPS contacted corporate security in order to request videotape of who had locked her bikes that anyone from the Joliet Refinery responded to her requests for help. Even then, the Human Resources department and managers were upset with PHILLIPS, rather than the perpetrators of the harassment.

40.    This harassment has not been limited to the workplace. PHILLIPS has witnessed a coworker driving by her house slowly, which has also drawn the concern of her neighbors.

41.    These actions appear to be part of the ongoing effort to make PHILLIPS feel physically threatened and intimidated in order to drive her out of her position.

12

## PHILLIPS Repeatedly Put EXXONMOBIL on Notice

42. PHILLIPS raised these issues with multiple EXXONMOBIL supervisors and Human Resources, to no avail.

43. Her attempts to find help from management have been complicated by the fact that PHILLIPS's supervisors have openly expressed disdain for having a woman and gay person on the crew. In PHILLIPS's presence, at least two supervisors have made comments to men about "keeping your woman in her place at home" and "any man who doesn't wear the pants in his relationship is a little bitch." Multiple supervisors also have referred to people, in PHILLIPS's presence, as "fags" and "homos," which PHILLIPS understood to be derogatory references to gay people.

44. In or about March 2017, PHILLIPS appealed to other supervisors. PHILLIPS specifically addressed how she had been harassed based on her sex and sexual orientation, the use of physical violence against her, and how unsafe she felt.

45. In April 2017, PHILLIPS met with Scott Carpenter and Sergio Moreno, both in the Human Resources department, who told her that they had investigated and found her claims substantiated.

46. They also said that even though PHILLIPS's claims were correct, she would be required to continue to work alongside the coworker who had threatened and assaulted her. When PHILLIPS asked if he would be

13

held accountable for his conduct, they told her that their understanding was that EXXONMOBIL had already required the male coworker to apologize to PHILLIPS for locking her bike and that he would be on his "best behavior." With the apparent objective of causing PHILLIPS to believe she did not have it so bad, Carpenter told her that things at the refinery were not as bad for women now as they had been in the 1970s.

47.    PHILLIPS was stunned and frightened. She told Carpenter and Moreno, in two separate meetings, that she was in a toxic environment and felt totally unsafe. The company did nothing whatsoever to help PHILLIPS. The graffiti continued to appear, becoming more threatening, including the chilling message, "DIE AMY RAT BITCH," which PHILLIPS observed in or around late May 2017.

48.    She followed-up with Human Resources again in or around June 2017, telling Carpenter that she was still being harassed, intimidated, and singled out for being a gay woman in her complex, and informing him that the name calling, graffiti, isolation, and other mistreatment was continuing. She also specifically advised him that she was being left alone to take equipment out of service, which is unsafe, and that she was frightened. Nothing was done to assist PHILLIPS.

**The Retaliation Increases**

49.     Having already experienced retaliation based on her complaints to supervisors and Human Resources, on or about July 6, 2017, PHILLIPS notified EXXONMOBIL's Law Department about the discrimination and retaliation she was experiencing. About a month later, on or about August 10, 2017, PHILLIPS filed a charge of discrimination and retaliation with the Equal Employment Opportunity Commission and the Illinois Department of Human Rights.

50.     Rather than protecting PHILLIPS, the company increased its discriminatory and retaliatory treatment toward PHILLIPS.

51.     For example, in or about August 2017, PHILLIPS was in a training meeting with approximately 20 other employees from the pretreater facility. EXXONMOBIL—knowing that PHILLIPS was already being retaliated against and referred to as a "rat" for going to Human Resources with complaints—sent supervisors to take PHILLIPS from the meeting, in front of all of her coworkers, to be interviewed by Human Resources.

52.     EXXONMOBIL also continued to assign PHILLIPS to work alongside people who EXXONMOBIL knew physically threatened and assaulted PHILLIPS. EXXONMOBIL employees at the Joliet Refinery work in shifts. At the end of a shift, one employee "makes relief" with another who has been on duty. The employee going off duty is required to update the

15

employee coming on duty about what has happened during the shift. Multiple times, and as recently as August and September 2017, EXXONMOBIL scheduled PHILLIPS to make relief with the same man described above in paragraphs 28 to 35, who repeatedly physically assaulted PHILLIPS and implicitly threatened to kill her.

53. Likewise, on or about August 9, 2017, another coworker verbally attacked PHILLIPS. PHILLIPS had asked the coworker about why he was consistently relieving her late, and he told her specifically and in front of other male coworkers that he was doing so because she made complaints to Human Resources. The male coworker became enraged at PHILLIPS and screamed at her, with words to the effect of "Go the fuck home and get the fuck out of here bitch!" He also stated that no one at the company supported PHILLIPS and that she should just leave.

54. PHILLIPS reported this incident, including to EXXONMOBIL's Law Department. EXXONMOBIL nevertheless continued to schedule PHILLIPS to make relief with this individual, including as recently as September 2017.

55. This was extremely stressful and frightening for PHILLIPS. Multiple times, when PHILLIPS saw that she was scheduled to make relief with men who had threatened and harmed her, she contacted Human Resources. Human Resources initially declined to intervene, stating

that PHILLIPS would have a better chance at getting the schedule changed if she asked on her own. PHILLIPS had to reach out directly to the scheduler and plead for a favor, to get the schedule changed.

56. Instead of disciplining PHILLIPS's male coworkers, EXXONMOBIL took steps to intimidate and harass PHILLIPS. When PHILLIPS started at EXXONMOBIL five years ago, she had a small side remodeling business. Although she spends little time on the business, it continues to exist and has been known to EXXONMOBIL since PHILLIPS came on board. On or about October 4, 2017, PHILLIPS was called into a meeting and asked questions about whether she was violating the company's conflict-of-interest rules.

57. Although PHILLIPS's tiny remodeling business is clearly not in conflict with the business interests of a global oil company, EXXONMOBIL employees asked her a number of questions about the business. It was clear to PHILLIPS that EXXONMOBIL was looking for an excuse to terminate her.

**PHILLIPS Is Seriously Injured**

58. PHILLIPS's fear of further physical injury from the systemic harassment and retaliation by her male coworkers was realized in the early morning hours of October 13, 2017.

17

59.     PHILLIPS was using ropes to tow heavy, twenty-foot long hoses from the ground, up multiple flights, to the top level of a deck. Though she had repeatedly requested support from her team, her supervisor told her that no one was available to help her. PHILLIPS spent nearly twelve hours hauling and connecting the hoses, retrieving and connecting fittings, and preparing large equipment so that it was safe for other crews to handle—all without sufficient support.

60.     Near the end of her shift, PHILLIPS, exhausted and working alone, twisted her ankle in a hole and tripped over the uneven heavy metal grating.

61.     She fell so hard that her hardhat and wrenches flew, she broke her radio, and she struck her head on the ground, temporarily blacking out. When she came to, one of her few female coworkers was standing above her and tried to help PHILLIPS get back to her feet. When PHILLIPS stood up, her knee gave out, and she had to be carried down five flights of stairs.

62.     PHILLIPS was taken to the medical complex at the Joliet Refinery, which is operated by EXXONMOBIL. After a brief examination, PHILLIPS was told by the EXXONMOBIL nurses that she should not go to the emergency room or see her own doctor, but instead, go home and come back to work later that same day for further evaluation by EXXONMOBIL's doctor. The EXXONMOBIL nurse sought, in particular, to discourage

18

PHILLIPS from going to the emergency room, stating that it would be a long wait, would not be covered by insurance, and would be unnecessary.

63.    After speaking with her mother, a medical professional, PHILLIPS went to the emergency room. There, she was examined, informed that she had a concussion, told she should have gone to the emergency room immediately, and instructed not to return to work that day.

64.    The following day, PHILLIPS saw her own primary-care doctor, who said that she should rest and should not return to work in light of her condition. When PHILLIPS informed the EXXONMOBIL nurse that on her doctor's advice, she was resting, in a lot of pain, and would not be in that day, the nurse questioned PHILLIPS's professionalism.

65.    PHILLIPS fears that her requests for assistance from her male coworkers will continue to be ignored going forward, and she will be at risk of future serious physical injury. This well-founded fear, along with the other matters described above, causes her significant anxiety and distress when she has to go to work.

## COUNT I
## Discrimination Based on Sex
## Title VII

66. PHILLIPS incorporates the foregoing allegations here.

67. PHILLIPS is one of the few women working in the pretreater unit at the Joliet Refinery, and she is the only woman in her crew. Moreover, she is the only openly gay member of her crew.

68. Title VII provides that employers may not discriminate against any individual with respect to her compensation, terms, conditions, or privileges of employment because of the individual's sex.

69. PHILLIPS is an employee of EXXONMOBIL as defined by Title VII.

70. EXXONMOBIL is an employer as defined by Title VII.

71. PHILLIPS has been targeted and harassed because she is a woman and did not conform to stereotypes about how women should appear and behave. She has also been targeted and harassed because she is a lesbian. The discriminatory conduct includes, but is not limited to: verbal harassment and slurs; explicit and hostile graffiti of a sexual nature; physical harassment and threats of violence; and denial of opportunities for training, promotion, and additional compensation.

72. The actions of EXXONMOBIL were intentional, willful, in deliberate disregard of, and with reckless indifference to PHILLIPS's rights.

20

73.   As a direct and proximate result of those actions, the terms, conditions, and privileges of PHILLIPS's employment were adversely affected.

74.   As a further direct and proximate result of EXXONMOBIL's unlawful actions against PHILLIPS as described, PHILLIPS has sustained injuries and damages, including but not limited to the loss of earnings and earning capacity; physical harm; and mental and emotional distress, including anxiety, mental anguish, humiliation, and embarrassment.

**COUNT II**
**Retaliation**
**Title VII**

75.   PHILLIPS incorporates the foregoing allegations here.

76.   PHILLIPS engaged in protected activity when she made complaints to EXXONMOBIL, including to supervisors and Human Resources, about harassment and discrimination by her coworkers.

77.   PHILLIPS engaged in protected activity when she filed her charge of discrimination and retaliation with the EEOC and IDHR.

78.   EXXONMOBIL retaliated against PHILLIPS by the conduct described above, including but not limited to: repeatedly ignoring her requests for help; failing to discipline her male coworkers who harassed her; continuing to assign her to work alongside men who had harassed and

21

harmed her; and conducting an unnecessary investigation into her small remodeling business.

79.    EXXONMOBIL's actions were intentional, willful, in deliberate disregard of, and with reckless indifference to PHILLIPS's rights.

80.    As a direct and proximate result of those actions, the terms, conditions, and privileges of PHILLIPS's employment were adversely affected.

81.    As a further direct and proximate result of EXXONMOBIL's unlawful actions against PHILLIPS as described, PHILLIPS has sustained injuries and damages, including but not limited to the loss of earnings and earning capacity; physical harm; and mental and emotional distress, including anxiety, mental anguish, humiliation, and embarrassment.

## COUNT III
### Intentional Infliction of Emotional Distress

82.    PHILLIPS incorporates the foregoing allegations here.

83.    EXXONMOBIL engaged in conduct that was extreme and outrageous, including but not limited to: assigning PHILLIPS to work in a blatantly sexist and hostile work environment; condoning constant mistreatment of PHILLIPS in the pretreater unit, including by supervisors; allowing the proliferation of hateful, offensive graffiti throughout the Joliet

Refinery that targeted PHILLIPS; repeatedly ignoring PHILLIPS's claims of harassment and discrimination; failing to discipline those engaging in misconduct toward PHILLIPS; refusing to take steps to ensure that PHILLIPS would be safe at the Joliet Refinery; and retaliating against PHILLIPS.

84. EXXONMOBIL engaged in this extreme and outrageous conduct knowing that there was a high probability, or with reckless disregard of the probability, of causing physical harm, severe emotional distress, and mental anguish to PHILLIPS.

85. EXXONMOBIL's conduct caused severe emotional distress and physical harm to PHILLIPS.

86. As a direct and proximate result of EXXONMOBIL's conduct, PHILLIPS was harmed and continues to experience physical harm, severe emotional distress, and mental anguish.

**COUNT IV**
**Negligent Infliction of Emotional Distress**

87. PHILLIPS incorporates the foregoing allegations here.

88. EXXONMOBIL owed PHILLIPS a duty of care as its employee. Moreover, EXXONMOBIL knew or should have known that there was a likelihood of harm to PHILLIPS as a result of the discriminatory, harassing, and retaliatory treatment by her supervisors and coworkers.

89.     EXXONMOBIL breached that duty of care by assigning PHILLIPS to work in a blatantly sexist and hostile work environment; condoning constant mistreatment of PHILLIPS in the pretreater unit, including by supervisors; allowing the proliferation of hateful, offensive graffiti throughout the Joliet Refinery that targeted PHILLIPS; repeatedly ignoring PHILLIPS's claims of harassment and discrimination; failing to discipline those engaging in misconduct toward PHILLIPS; refusing to take steps to ensure that PHILLIPS would be safe at the Joliet Refinery; and retaliating against PHILLIPS.

90.     As a direct and proximate result of EXXONMOBIL's conduct, PHILLIPS was harmed and continues to experience physical harm, severe emotional distress, and mental anguish.

## COUNT V
## Negligent Retention and Supervision

91.     PHILLIPS incorporates the foregoing allegations here.

92.     As set forth above, PHILLIPS repeatedly told EXXONMOBIL that her male coworkers and supervisors were engaged in discriminatory and retaliatory conduct, including but not limited to: verbal harassment and slurs; explicit and hostile graffiti of a sexual nature; physical harassment and threats of violence; and denial of opportunities for training, promotion, and additional compensation.

24

93.     EXXONMOBIL knew or should have known that the male coworkers and supervisors were unfit for the positions that they occupied and created a danger to PHILLIPS and others.

94.     EXXONMOBIL also had a duty to supervise its employees and did so negligently when EXXONMOBIL allowed PHILLIPS to continue to be harassed and retaliated against by her male coworkers and supervisors.

95.     As a direct and proximate result of EXXONMOBIL's conduct and the retention and supervision of the unfit employees, PHILLIPS was harmed and continues to experience physical harm, severe emotional distress, and mental anguish.

WHEREFORE, Plaintiff AMY PHILLIPS requests judgment in her favor and against EXXONMOBIL, as follows:

a.     Declaratory relief, including but not limited to a declaration that EXXONMOBIL violated Title VII;

b.     Injunctive relief, including but not limited to requiring EXXONMOBIL to enact and implement policies and procedures to eliminate harassment based on sex and sexual orientation at the EXXONMOBIL Joliet Refinery;

c.     Compensatory damages in an amount to be determined at trial;

d.     Punitive damages;

e.     Attorneys' fees, costs, and expenses;

f.    Pre-judgment and post-judgment interest; and

g.    To grant further relief as this Court should find just and proper.

## DEMAND FOR JURY TRIAL

NOW COMES Plaintiff, AMY PHILLIPS, by and through her attorneys, Salvatore Prescott & Porter, PLLC, and hereby demands a jury trial in the above-captioned matter.

Dated:  October 25, 2017          By:    s/ Julie B. Porter
                                         JULIE B. PORTER
                                         KYLE A. PALAZZOLO
                                         Salvatore Prescott & Porter, PLLC
                                         1010 Davis Street
                                         Evanston, IL 60201
                                         P: (312) 283-5711
                                         F: (312) 724-8353
                                         porter@spplawyers.com
                                         palazzolo@spplawyers.com

                                         *Attorneys for Plaintiff*