UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| AMY PHILLIPS, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 17 C 07703 |
| | ) | |
| v. | ) | |
| | ) | Judge Jorge L. Alonso |
| EXXON MOBIL CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

On October 25, 2017, plaintiff Amy Phillips ("Phillips") filed a five-count complaint against her employer, defendant Exxon Mobil Corporation ("Exxon Mobil"). She asserts Title VII claims in Counts I and II (harassment and discrimination) and three state law tort claims in Counts III-V (Intentional Infliction of Emotional Distress, Negligent Infliction of Emotional Distress, and Negligent Retention and Supervision). Defendant filed a motion to dismiss Counts III-V of plaintiff's complaint, arguing preemption by both the Illinois Human Rights Act ("IHRA") and the Illinois Workers' Compensation Act ("IWCA"). For the reasons set forth below, the Court grants in part and denies in part defendant's motion to dismiss.

**I.   BACKGROUND**

The following facts are from plaintiff's complaint and are taken as true. In 2013, Phillips began working at Exxon Mobil's Joliet Refinery as a process operator. After a short period of classroom training, plaintiff started training in the field, at which point she noticed her unit's negative attitude towards women and homosexuals, of which classes Phillips is a member. *See* Compl. ¶¶ 14, 18. Phillips's coworkers and supervisors subjected her to derogatory insults, such as, "You should just stay at home like most women," and, on multiple occasions, addressed her

as "bitch" and "cunt." Comp. ¶¶ 15-16. Phillips was also victim to graffiti messages such as, "Amy Lazy Gay Bitch" and "Die Amy Fag Rat Bitch." Compl. ¶ 24.

In her complaint, Phillips also alleges that her supervisors and coworkers frequently obstructed her ability to perform her job and to earn promotions. Phillips alleges that her supervisors refused to train her on performing key tasks, forcing her to resort to YouTube instructional videos to learn the necessary skills. She further alleges that her supervisors repeatedly delayed any opportunity for her to take a test that would enable her to achieve a larger salary. Additionally, during a mandatory walkthrough to demonstrate her proficiency in certain tasks, Phillips's supervisors required her to perform the tasks backwards – a demand not made of her male coworkers. *See* Compl. ¶ 22. On several occasions, Phillips discovered that her bicycle (which was the mode of transportation for employees traveling through the large Joliet Refinery) had been interfered with. She found her bicycle with flattened tires, with a missing seat, and chained with a heavy-duty lock.

Phillips alleges that she has suffered physical abuse and threats by her coworkers and through the actions of her supervisors. Phillips alleges that, on one specific occasion in 2016, she was working atop a tower with a coworker (whom she suspected of having written some of the graffiti messages) when the coworker said, "You know, people can fall off towers, and no one would know anything other than that is was an accident." Compl. ¶¶ 31-32. That same coworker later shoulder checked Phillips by purposefully thrusting his shoulder into her body. Despite Phillips's complaints about this individual, Exxon Mobil continued to assign her to work alongside him.

On another occasion, Phillips tripped and fell while performing difficult labor without assistance, despite having repeatedly asked her supervisors to send her help. She suffered an

assortment of injuries from this fall, including a twisted ankle and a concussion, the latter of which she sustained upon striking her head against the ground and temporarily falling unconscious.

Throughout all this activity, Phillips complained to Exxon Mobil's Human Resource Department, its Law Department and her supervisors. Phillips alleges that most of her complaints went unanswered and that the few responses she received were unhelpful. For example, Phillips was told that her conditions were better now than what women experienced in the 1970's. In fact, Phillips alleges that the only responses she consistently received from her complaints were retaliatory measures taken by her coworkers, supervisors and Exxon Mobil. The harassing graffiti continued, as did the general hostile attitude of her coworkers. After plaintiff filed a charge of discrimination and retaliation with the Equal Employment Opportunity Commission and the Illinois Department of Human Rights on July 6, 2017, Exxon Mobil sent supervisors to withdraw Phillips from a training meeting in front of many of her coworkers so that she could speak with Human Resources. Phillips alleges that this was done as a means to embarrass and expose her in front of her coworkers. *See* Compl. ¶ 51.

Based on these allegations, Phillips seeks relief for violations of Title VII (sexual harassment and retaliation in Counts I and II, respectively), Intentional Infliction of Emotional Distress ("IIED," Count III), Negligent Infliction of Emotional Distress ("NIED," Count IV), and Negligent Retention and Supervision (Count V).

## II. STANDARD ON A MOTION TO DISMISS

When reviewing a defendant's motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must accept the plaintiff's well-pleaded facts and draw all inferences in the plaintiff's favor. *Firestone Financial Corp. v. Meyer*, 796 F.3d 822 (7th Cir.

3

2015). A plaintiff's complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The complaint need not contain detailed factual allegations, but the allegations must be "enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

### III. DISCUSSION

Exxon Mobil asks this Court to dismiss Counts III, IV and V on the grounds that the Illinois Workers' Compensation Act and the Illinois Human Rights Act preempt them. Preemption is an affirmative defense. *Baylay v. Etihad Airways P.J.S.C.*, 881 F.3d 1032, 1039 (7th Cir. 2018). A plaintiff need not plead around an affirmative defense, so a court may dismiss a claim based on an affirmative defense only when the plaintiff "plead[s] himself out of court by alleging (and thus admitting) the ingredients of a defense." *Chi. Bldg Design, PC v. Mongolian House Inc.*, 770 F.3d 610, 613-14 (7th Cir. 2014); *United States Gypsum v. Ind. Gas Co.*, 350 F.3d 623, 626 (7th Cir. 2003).

#### A. Preemption by the Illinois Workers' Compensation Act

The Illinois Workers' Compensation Act provides, "the exclusive remedy for accidental injuries" that occur in the workplace. *Hunt-Golliday v. Metro Water Reclamation Dist. of Greater Chi.*, 104 F.3d 1004, 1016 (7th Cir. 1997). The Act establishes liability without fault but eliminates the employee's right to recover at common law for covered injuries. *See* 820 Ill. Comp. Stat. Ann. 305/5(a) (West 2014) ("No common law or statutory right to recover damages from the employer . . . sustained by any employee while engaged in the line of his duty as such employee, other than the compensation herein provided is available to any employee who is covered by the provisions of this Act . . . .").

4

Four exceptions to this exclusivity provision exist. A claim is not preempted by the IWCA if the injury was (1) not accidental, (2) did not arise from the plaintiff's employment, (3) was not received during the course of the plaintiff's employment, or (4) is not compensable under the Act. *Tessendorf v. Edward Hines Lumber Co.*, 393 F. Supp. 2d 686, 692 (N.D. Ill. 2005) (quoting *Hunt-Golliday* 104 F.3d at 1017). Emotional injuries are compensable under the IWCA. *Meerbrey v. Marshall Field & Co.*, 564 N.E.2d 1222, 1228 (Ill. 1990) (citing *Collier v. Wagner Castings Co.*, 408 N.E.2d 198 (Ill. 1980)); *see also Richardson v. Cty. of Cook*, 621 N.E.2d 114, 118 (Ill. App. Ct. 1993) ("Furthermore, the fact that the employee sustained no physical injury or trauma is irrelevant to the applicability of the Act.").

### 1. Count III: Phillips's Intentional Infliction of Emotional Distress claim is not preempted by the Illinois Workers' Compensation Act.

To state a common law IIED claim, the plaintiff must allege that the defendant intentionally or recklessly engaged in extreme and outrageous conduct and that the plaintiff suffered severe emotional distress as a result. *Schweihs v. Chase Home Finance, LLC*, 77 N.E.3d 50, 63 (Ill. 2016).

IIED claims are preempted under the IWCA where an employee's tortious conduct was "accidental." *See Meerbrey*, 564 N.E.2d at 1226. The Illinois Supreme Court has explained that "accidental" within the meaning of the Act means "anything that happens without design or an event which is unforeseen by the person to whom it happens." *Meerbrey*, 564 N.E.2d at 1226 (quoting *Pathfinder Co. v. Indus. Comm'n*, 62 Ill.2d 556, 563 (1976)). For this reason, "injuries inflicted intentionally upon an employee by a co-employee are 'accidental' within the meaning of the Act, since such injuries are unexpected and unforeseeable from the injured employee's point of view." *Meerbrey*, 564 N.E.2d at 1226 (citing *Collier*, 81 Ill.2d at 238). These injuries "are also accidental from the employer's perspective" to some extent. *Meerbrey*, 564 N.E.2d at

5

1226.  Intentional torts, however, are not accidental from the employer's perspective when either the employer directly authorized the tortious behavior or the employer's "alter ego" committed the action.  *Meerbrey*, 564 N.E.2d at 1226.

The upshot is that it is possible that plaintiff's claim for intentional infliction of emotional distress is not accidental and, thus, not preempted.  Still, it is true, as Exxon Mobil points out, that actions committed by supervisors or managers in the scope of their employment do not represent employer-authorized action and, thus, are accidental.  *Thomas v. Habitat Co.*, 213 F. Supp. 2d 887, 892 (N.D. Ill. 2002).  Plaintiff may, therefore, find her claim preempted at a subsequent stage of this litigation.  At this stage, because plaintiff is not required to plead around an affirmative defense, it is enough to say plaintiff has not alleged (and thus admitted) that the conduct was necessarily accidental, so she has not pled herself out of court.  The Court will not dismiss the IIED claim on the grounds of preemption by the IWCA at this time.

### 2. Count IV: Phillips's Negligent Infliction of Emotional Distress claim is preempted by the IWCA.

The tort of negligent infliction of emotional distress is related to intentional infliction of emotional distress, but it is based on negligence.  To prevail on an NIED claim, the plaintiff must show the existence of a duty owed by the defendant to the plaintiff, the defendant's breach of that duty and an injury proximately resulting from that breach.  *Corgan v. Muehling*, 574 N.E.2d 602, 606 (Ill. 1991) (quoting *Kirk v. Michael Reese Hosp. & Med. Ctr.*, 117 Ill.2d 507, 525).

Claims for negligence are inherently claims for accidental injuries.  *Arnold v. Janssen Pharmaceutica, Inc.*, 215 F. Supp. 2d 951, 957 (N.D. Ill. 2002) ("An act of negligence, even if committed by the employer itself, is 'accidental' for purposes of the IWCA.").  Thus, claims for negligent infliction of emotional distress are preempted by the IWCA.  *Doe v. La Magdalena II, Inc.*, 585 F. Supp. 2d 984, 986-87 (N.D. Ill. 2008) (dismissing NIED claims as preempted by the

IWCA); *Porter v. Int'l Bus. Machines Corp.*, 21 F. Supp. 2d 829, 833 (N.D. Ill. 1998) ("[Plaintiff's] claim of negligent infliction of emotional distress is barred by the IWCA."); *Small v. Chi. Health Clubs, Inc.*, 843 F. Supp. 398, 403 (N.D. Ill. 1994). Because negligence claims are necessarily accidental, plaintiff has alleged (and thus admitted) the elements of defendant's preemption defense. She has pled herself out of court, and Count IV is dismissed with prejudice.

### 3. Count V: Phillips's Negligent Retention and Supervision claim is preempted by the IWCA.

As explained above, the IWCA bars common law tort claims involving negligence. *Santos v. Boeing Co.*, No. 02 C 9310, 2004 WL 1384724, at *3 (N.D. Ill. 2004); *Arnold*, 215 F. Supp. 2d at 957. Thus, claims for negligent retention are also preempted by the IWCA. *Walker v. Doctors Hospital of Hyde Park*, 110 F. Supp. 2d 704, 714 (N.D. Ill. 2000) ("The IWCA abrogates employer liability for all common law negligence claims, including negligent retention claims."); *Simmons v. Chi. Public Library*, 860 F. Supp. 490, 494 (N.D. Ill. 1994) (concluding that plaintiff's negligent retention claim was preempted by the IWCA). Plaintiff has alleged the elements of defendant's preemption defense and pled herself out of court. Count V is dismissed with prejudice.

### B. Preemption by the Illinois Human Rights Act

Exxon Mobil also contends that Phillips's claim for intentional infliction of emotional distress is preempted by the IHRA, which confers exclusive jurisdiction over alleged civil rights violations to the Illinois Human Rights Commission. *Sanglap v. LaSalle Bank, FSB*, 345 F.3d 515, 519 (7th Cir. 2003). The Act states, "[e]xcept as otherwise provided by law, no court of this state shall have jurisdiction over the subject of an alleged civil rights violation other than as set forth in this Act," 775 Ill. Comp. Stat. Ann. 5/8-111(D) (West 2008). Among other things, the Act prohibits sexual harassment, 775 Ill. Comp. Stat. Ann. 5/2-102(D) (West 2018).

Plaintiff's claim for intentional infliction of emotional distress is preempted by the IHRA if it is inextricably linked with her sexual harassment claim. *Maksimovic v. Tsogalis*, 177 Ill. 2d 511, 517 (Ill. 1997) ("[W]hether the circuit court may exercise jurisdiction over a tort claim depends upon whether the tort claim is inextricably linked to a civil rights violation such that there is no independent basis for the action apart from the Act itself."). A tort claim "is not inextricably linked with a civil rights violation where a plaintiff can establish the necessary elements of the tort independent of any legal duties created by the Illinois Human Rights Act." *Maksimovic*, 177 Ill. 2d at 519.

Mere factual overlap between the state-law tort and the IHRA claim does not establish preemption. *Torres v. Merck Sharp & Dohme Corp.*, 255 F. Supp. 3d 826, 832 (N.D. Ill. 2017); *Corcoran v. City of Chi.*, No. 10 C 6825, 2011 WL 2110264, at *5 ("The fact that there is factual overlap is not outcome determinative."). In fact, a plaintiff could simply re-plead the same facts in a multiple count complaint without triggering preemption. *See Siljak v. Ravenswood Disposal Serv., Inc.*, No. 00 C 3405, 2001 WL 436133, at *3 (N.D. Ill. 2001) (explaining that despite plaintiff re-pleading the very same facts in both her Title VII and common law tort claims, these claims remain intact).

A claim for intentional infliction of emotional distress is not necessarily dependent upon the existence of the IHRA's prohibition against sexual discrimination. Thus, IIED claims are not categorically preempted by the IHRA. *Naeem v. McKesson Drug Co.*, 444 F.3d 593, 593 (7th Cir. 2006); *Sanglap*, 345 F.3d at 519; *Benitez v. KFC Nat'l Mgmt. Co.*, 714 N.E.2d 1002, 1009 (Ill. App. Ct. 1999). Offensive conduct may give rise both to a claim for IIED and to a claim under the IHRA, so long as the former does not rest on the legal responsibilities created by the latter. *Figueroa v. City of Chi.*, No. 97 C 8861, 1999 WL 163022, at *10 (N.D. Ill. 1999).

The essential question to be asked is whether Exxon Mobil's conduct – devoid of any sexually discriminatory motive – could support a claim for intentional infliction of emotional distress. *Sanglap*, 345 F.3d at 520. Among other things, plaintiff alleges that defendant assigned Phillips to work in a sexist environment, condoned the proliferation of sexist comments and graffiti, ignored her complaints of misconduct and refused to ensure her safety. Compl. ¶ 83.

Phillips's allegations that she was assigned to work in a sexist environment are inextricably linked to her sexual harassment claim. Absent the duties created by the IHRA (which prohibits sexual harassment) the comments and graffiti directed at Phillips would not rise to the level of extreme and outrageous conduct. That is, what makes the conduct offensive is its sexually discriminatory nature, making the conduct inseparable from the prohibition of sexual harassment created by the IHRA. *See Krocka v. City of Chi.*, 203 F.3d 507, 517 (7th Cir. 2000) (dismissing plaintiff's IIED claim because defendant's comments were offensive only for referring to plaintiff's disability); *see also Johnson v. Joliet Junior College*, No. 06 C 5086, 2007 WL 1119215, at *3 (N.D. Ill. 2007) (explaining that defendant's conduct was extreme and outrageous only because it involved racial discrimination). Exxon Mobil's alleged failure to discipline misconduct is also inextricably linked to Phillips's sexual harassment allegations. The emotional distress caused by Exxon Mobil's refusal to take remedial action is relevant only by virtue of the sexual discrimination that gave rise to it. *Figueroa*, No. 97 C 8861, 1999 WL 163022, at *11 ("The essence of [plaintiff's] IIED claim against the [defendants] is that [plaintiff] suffered emotional distress because these individuals failed to remedy the alleged sexual harassment. These allegations are only relevant to [plaintiff's] claims of IIED by virtue of the legal duties created by the IHRA.").

Not all of plaintiff's allegations of intentional infliction of emotional distress are inextricably linked with her sexual harassment claim. Plaintiff's allegations that Exxon Mobil employees failed to give her proper training, refused to provide her proper assistance for dangerous and difficult tasks and undermined her ability to perform her job by incapacitating her bicycle are all examples of independently outrageous misconduct. *See Naeem*, 444 F.3d at 605 ("[I]nstead, she alleges a pattern of behavior by the defendants that created impossible deadlines, set up obstacles to her performing her job, and sabotaged her work . . . it is clear that her claim rests not just on behavior that is sexually harassing, but rather behavior that would be a tort no matter what the motives of the defendant."). This behavior seems to extend beyond mere annoyances or minor irritations. *See Sanglap*, 345 F.3d at 518 ("Illinois courts recognize that context affects the inquiry [of whether conduct is outrageous]."); *see also Graham v. Commonwealth Edison Co.*, 742 N.E.2d 858, 866 (Ill. App. Ct. 2000) (citations omitted) ("Liability [for IIED claims] does not extend to 'mere insults, indignities, threats, annoyances, petty oppressions or trivialities.'"). Because plaintiff alleges conduct that is outrageous without reference to the legal duties created by the IHRA, Count III is not preempted and survives defendant's motion to dismiss. Defendant's motion to dismiss is denied as to Count III.

## IV.   CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part Exxon Mobil's motion to dismiss [23].  The Court dismisses with prejudice Counts IV and V of Phillips's complaint.


**SO ORDERED.**                                          **ENTERED:**   July 18, 2018

_____
**JORGE L. ALONSO**
**United States District Judge**